COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Coleman and Senior Judge Cole
Argued at Richmond, Virginia


DARRYL BRUCE WHEATON

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1409-95-2      CHIEF JUDGE NORMAN K. MOON
                                         APRIL 22, 1997
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                   Paul M. Peatross, Jr., Judge

          Garrett M. Smith (Michie, Hamlett, Lowry,
          Rasmussen & Tweel, P.C., on briefs), for
          appellant.

          Michael T. Judge, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.



     Darryl Bruce Wheaton appeals his conviction of attempted

murder and use of a firearm in the commission of attempted murder

in violation of Code § 18.2-53.1.  Wheaton asserts that: (1) the

trial court erred in admitting his statement obtained without his

being advised of his Miranda rights; and (2) that the evidence

was insufficient to support his convictions.

     We hold that: (1) Wheaton's statement was inconsistent with

his testimony at trial and was made under conditions assuring its

voluntary and trustworthy nature and therefore was properly

admitted for impeachment purposes; and (2) Wheaton failed to

properly preserve for appeal his arguments that the evidence was

insufficient to prove intent or that an act had been committed

_____
     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

toward the commission of murder, and therefore, Rule 5A:18 bars consideration of these questions on appeal.

In the early morning hours of December 10, 1994, Albemarle County Police Officers Raleigyh Anderson and Marcus T. Billingslea responded to a 911 call from Wheaton who stated that he had "choked his girlfriend and wanted to be arrested." The officers drove to Southwood Market, Southwood Trailer Park, Albemarle County, from which the call had originated. They were informed that Wheaton had proceeded to the trailer of his girlfriend and her son. When the officers arrived at the trailer, an outside light was on, and the officers could see into the trailer through a screen door as the interior door was open. The officers knocked and announced their presence, but no one answered the door.

The officers proceeded inside, repeatedly announcing their presence as they entered. Wheaton responded, stating that he had a gun and that if the officers came any closer he would shoot them and himself. The officers drew their weapons, backed out of the trailer, and called for backup. While waiting for backup to arrive, both officers heard Wheaton talking in a loud "emotional, kind of angry voice," stating that he wanted to see his "son one last time."[1] Several additional officers arrived, including John McKay and Ronald Kesner. McKay took a position about thirty feet from the front door where he could see into the trailer. Kesner

---

[1] Wheaton's girlfriend had a son who was not Wheaton's biological child, but whom Wheaton treated as his son.

stood behind a tree about fifteen to twenty feet from the front door.

Wheaton continued moving around in the trailer and occasionally yelling "I'm going to kill you, I'm going to kill myself, I'm going to f---ing kill you . . ." and screaming that he wanted to see his son. From his vantage point, McKay could see that Wheaton was carrying a shotgun and a rifle and that he was holding the barrels of both weapons up under his chin.

Wheaton stepped outside of the front door and Kesner and McKay tried to convince him to give himself up and told him they would try to get his son. Wheaton went back inside and sat down. McKay, who could see Wheaton in the trailer, testified that after he sat down, Wheaton appeared "a little bit calmer," but that after a few more minutes, Wheaton stood up, "and there was absolutely no doubt, you could see the determination and he had changed." As he stood, Wheaton stated he was "going to f---ing kill you" and McKay yelled to Kesner that Wheaton was coming toward the door. Wheaton had the shotgun in his right hand and the rifle in his left. McKay testified that as Wheaton came toward the trailer door he lowered the shotgun down, pointing it at the tree behind which Officer Kesner was standing. McKay stated that as he kicked the screen door open, Wheaton shouted "I'm going to f---ing kill you." McKay, Kesner, and other officers fired upon Wheaton, hitting him several times. Kesner testified that before firing, he saw the shotgun lowered in his direction.

Wheaton reentered the trailer, and the officers pursued him inside where they found him lying face down. McKay cuffed Wheaton and he was taken to the hospital. Detective James E. Bunch, assigned to conduct the internal investigation of the shooting, was present and stood on the porch where Wheaton had been shot. Bunch testified that from that vantage point he could see the tree Kesner had been standing behind and that he would have been able to see anyone standing behind the tree.

At the hospital, blood tests revealed that Wheaton's blood alcohol content was .015. Wheaton underwent surgery for the multiple gunshot wounds and remained in the hospital. At 9:05 a.m. a warrant was issued for Wheaton's arrest.[2] Bunch visited the hospital that morning and sought permission from hospital administrators to speak with Wheaton. Wheaton indicated that he wanted to speak with Bunch, and Bunch went to his room. Bunch informed Wheaton that he was not under arrest, that he was not being held under a warrant, and that Bunch's purpose in visiting was to conduct an investigation of the shooting for the police department. Although no guard was posted to Wheaton's room, the police requested that the hospital inform them when Wheaton was released.

Wheaton advised Bunch that he had been given morphine for his operation, but indicated he wanted to talk with Bunch. Bunch asked Wheaton a variety of questions about the incident including

_____

[2]The warrant was executed eleven days later.

questions about what Wheaton recalled saying at various points. Wheaton stated that he could not recall what he had said to the arriving officers and that he had trouble recalling much of what had occurred.  Bunch testified that during this conversation, Wheaton appeared coherent, was cooperative, nonconfrontational, and understood the questions asked.

Admission of Statement

At trial the Commonwealth used Wheaton's statement to impeach his testimony.  Wheaton's counsel objected, arguing that Wheaton's statement constituted custodial interrogation and that it should be excluded because Wheaton had not been given his <u>Miranda</u> rights.

The Commonwealth argues that Wheaton failed to properly preserve the issue of the admission of his statement, by failing to file a written suppression motion seven days in advance of trial as required by Code § 19.2-266.2.  However, Code § 19.2-266.2 also provides that a "[c]ourt may . . . for good cause shown and in the interest of justice, permit the motions or objections to be raised at a later time."  While we recognize the disadvantage to the Commonwealth, the trial judge's decision to rule on the substantive merits of Wheaton's objection at trial effectively waived the requirement that a written motion be made in advance.  Accordingly, Wheaton's objection to admission of his statement may be considered on appeal.

There are two requirements which must be met for the in-court use of a defendant's out-of-court statement where the

- 5 -

statement was obtained in violation of <u>Miranda</u>: (1) the statement must be inconsistent with the accused's testimony at trial; and (2) the statements must have been obtained under circumstances which assure their trustworthiness and voluntariness. <u>Harris v. New York</u>, 401 U.S. 222, 226 (1971). Assuming, arguendo, that Wheaton was in custody at the time of his statement to Bunch, and consequently that his statement was taken in violation of <u>Miranda</u>, we hold that the statement was admissible for impeachment purposes.

At trial, Wheaton was asked if he recalled telling Bunch that he did not remember substantial portions of the stand-off. He testified that "I think I've never stated that I had a full--" and was interrupted by the Commonwealth who asked for a "yes" or "no" answer. Wheaton replied that "I can't answer that way. It's not a yes or no question to me sir. I was on morphine that day, there was anything--." After commenting to the court that Wheaton was being unresponsive, the Commonwealth impeached Wheaton's testimony by having him read Bunch's question and his response in which Wheaton stated "I don't remember half the stuff, or half the shit . . . ." Further, Wheaton testified, on direct, that he had made certain comments to the officers when they first arrived on the scene. The Commonwealth impeached this testimony with Wheaton's statement by having him read aloud Bunch's question inquiring if he could remember saying anything to the officers and Wheaton's response "[n]o, sir." Wheaton's statement was again used for impeachment purposes when Wheaton

testified that he had never fully lowered his shotgun. At that point the Commonwealth had Wheaton read aloud his statement to Bunch that the shotgun was "straight out." This evidence is sufficient to sustain the finding that Wheaton's statement was inconsistent with his testimony at trial on several points and was used in a manner which satisfied criterion one as delineated in Harris.

We also hold the evidence was sufficient to sustain the finding that Wheaton's statement was both trustworthy and voluntary. Wheaton's statement was obtained immediately after the event in question by a police officer conducting an internal investigation. Wheaton indicated that he wanted to speak with Bunch and had the hospital administration informed of his desire to talk the morning Bunch came to the hospital and sought permission to speak with Wheaton. Bunch informed Wheaton that he was not under arrest, that he wasn't being held under warrant and that Bunch was there in order to conduct an investigation of the shooting for the police department. Wheaton answered a variety of questions and at no point indicated a desire not to answer. Bunch testified that Wheaton was cooperative and coherent throughout the questioning.

Finding that both Harris criteria were met, we hold that Wheaton's statement was properly admitted for impeachment purposes. Accordingly, we need not reach the issue of whether Wheaton was in custody at the time he made his statement to Bunch.

- 7 -

<u>Sufficiency of the Evidence</u>

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ." <u>McQuinn v. Commonwealth</u>, 20 Va. App. 753, 755, 460 S.E.2d 624, 626 (1995) (<u>en</u> <u>banc</u>). Here, Wheaton filed a written motion to set aside the verdict, in which he argued that the evidence was insufficient because "the element of malice was not proved beyond a reasonable doubt because [Wheaton] was suicidal at the time of the offense and the deadly weapon from which the jury might have inferred malice was in [his] possession for the purpose of committing suicide."

However, on brief, Wheaton raises two new arguments not contained in his motion to set aside the verdict. First, he argues that the evidence was insufficient to prove that he had the requisite intent to commit murder. Second, he argues that the evidence was insufficient to prove that he committed an act toward the commission of murder by lowering his weapon. Because Wheaton failed to preserve these questions, Rule 5A:18 now bars consideration of these questions on appeal. Further, because the record does not show any obvious miscarriage of justice, neither the ends of justice nor good cause permit waiver of the Rule 5A:18 bar. <u>Commonwealth v. Mounce</u>, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987).

Wheaton's argument that the granting of his petition for

appeal on this issue, by a three judge panel of this Court, bars by res judicata our review of whether these issues were properly preserved, is without merit. Wheaton incorrectly relies on our decision in Brown v. Commonwealth, 8 Va. App. 474, 382 S.E.2d 296 (1989), in which the Commonwealth asserted that the defendant's argument that the evidence was insufficient was procedurally barred by Rule 5A:18 because the defendant's "motion to set aside the verdict was too vague and general." Id. at 480, 382 S.E.2d at 300. We held that the defendant's general objection that the evidence was contrary to the law and evidence was adequate to preserve the question for appeal because, "[t]he record makes clear that the trial court considered and ruled upon the motion to set aside as challenging the sufficiency of the evidence to support the convictions." Id. Here, however, unlike Brown, the record does not reflect that the trial court was given notice of, or the opportunity to rule on, the issues raised on brief. The only sufficiency argument made to the court was Wheaton's assertion that malice had not been proved. On brief, Wheaton raises for the first time the arguments that the evidence was insufficient to prove intent or that an act had been committed toward the commission of murder.

Holding that these questions were not properly raised before the trial court, and therefore were not properly preserved, Rule 5A:18 bars consideration of these questions on appeal.

Accordingly, we affirm.

Affirmed.